UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Abshir H. A., | Case No. 19-cv-0021 (MJD/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew Saul,<br>*Commissioner of Social Security,* | |
| Defendant. | |

James Greeman, Esq., Greeman Toomey, 250 Marquette Avenue, Suite 1380, Minneapolis, MN 55401, for Plaintiff.

Marisa Silverman, Esq., and Elvi Jenkins, Esq., Social Security Administration, 1301 Young Street, Suite A702, Dallas, TX 75202, for Defendant.

Abshir H. A. appeals the Commissioner of Social Security's denial of his application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. Compl., Dkt. No. 1. Abshir filed for benefits on October 16, 2015, alleging a disability onset date of April 1, 2013. He contends the ALJ erred by (1) concluding he had not met the criteria for the relevant disability listing, (2) failing to incorporate all of Abshir's limitations in his residual functional capacity (RFC), (3) improperly weighing the opinion evidence, and (4) adopting statements Abshir made that suggest a greater residual functional capacity than the record as a whole supports. Because the record lacks substantial evidence to support the ALJ's conclusion that Abshir does not meet the "paragraph C" criteria of the relevant disability listing, the Court recommends the matter be remanded for further consideration.

**FINDINGS OF FACT**

**I.    Claimant's Medical History**

Abshir is a 29 year-old man originally from Somalia, who has lived in the United States for over a decade. R.[1] 72, 400, 463. The record is mixed regarding his level of English language proficiency, as several sources note that he speaks English fairly well, but medical professionals have noted a language barrier. *E.g.*, R. 268, 375, 395, 691, 748. He is blind in his left eye. R. 372.

Abshir was 22 at the onset of his alleged disability. R. 72. In mid-2011, he complained to medical professionals that he had begun to experience auditory hallucinations and disorganized thinking, as well as increasing anxiety, over the prior few months. R. 395-96, 400. A physician initially diagnosed Abshir with paranoid schizophrenia. R. 396. Dr. Michael Harlow, Abshir's treating psychiatrist for much of the time covered by the record, ruled out chronic paranoid schizophrenia and instead diagnosed Abshir with schizoaffective disorder. R. 414. Since August 2011, Abshir has been prescribed medication for his mental health symptoms. *Id.*

The record regarding Abshir's housing history is incomplete, but Abshir also became homeless some time in 2011, staying with various acquaintances or in homeless shelters. R. 373, 384, 400, 463. In the summer of 2013, Abshir began living in a group home.[2] R. 43. He lived at the first group home for several years before moving to a second group home in October 2017, where he currently lives. R. 43-44.

---

[1] "R." refers to the Administrative Record at Docket No. 9.
[2] Presumably, Abshir moved into the home in or around August, when the Minnesota State Medical Review Team approved his application for state disability benefits. *See* R.

In the later half of 2012, Abshir continued to demonstrate periods of disorganized thinking and seemingly irrational concerns that people wished to harm him. R. 373, 381-84. Over the subsequent years, physician notes indicate Abshir's symptoms appeared to improve, and he generally reported feeling at least "okay." *E.g.*, R. 413-14, 425-26, 435-36, 477-78. However, he informed his therapist that he continued to experience auditory hallucinations and anxiety, and suggested frustration with needing to continue his medication routine, R. 463, 532, 539, which his treating psychiatrist occasionally adjusted, R. 417, 577, 608. Notably, Abshir was hospitalized for several days in 2016 for worsening auditory hallucinations, after which his diagnosis reverted back to schizophrenia and his medications were increased. R. 698-703, 777.

## II.   ALJ Decision

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued her decision on August 1, 2018. At steps one and two, she found that Abshir has not engaged in substantial gainful activity since his application date and that he has the following severe impairments: left eye blindness, schizoaffective disorder, major depression, and borderline personality disorder. R. 12-13. At step three,

---

509. Abshir told a therapist he was referred to the group home after he drank bleach, as ordered by his auditory hallucinations, and was hospitalized. R. 463.

3

the ALJ found that these impairments did not meet or medically equal any listed impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. Considering the "paragraph B" criteria, she determined that Abshir did not suffer from at least one extreme or two marked limitations in the identified areas of functioning. R. 13-15. Abshir has not appealed this finding.

The ALJ also found that Abshir had not shown that the "paragraph C" criteria were met, despite his living in a group home. R. 15-16. The ALJ gave "great weight to the testimony and opinion of Dr. Lace, impartial medical expert[,]" who testified at the administrative hearing after reviewing the medical records. R. 14. She also gave weight to "the State Agency psychological consultants' assessment of the former mental listings and those former 'paragraph B' and 'paragraph C'" criteria. *Id.* Although she recognized that Abshir "has lived in a group home for an extended period of time," the ALJ emphasized that he is able to leave the home and that the "treatment provided does not support the establishment of C criteria." R. 15. She concluded Abshir "chooses to live in the group home because he had been homeless" and that the overall record did not demonstrate "a mental health basis for and/or commitment requiring him to live in a group home." *Id.* The ALJ further rejected the state medical review team's assessment of a serious and persistent mental illness, noting that the paragraph C criteria differ from those required to establish state services. *Id.* Nowhere in the ALJ's decision does she explicitly address whether Abshir has marginal adjustment.

The ALJ further determined that Abshir has the residual functional capacity to perform work at all exertion levels with certain limitations:

> "simple routine, repetitive[,] fixed and predictable types of tasks and instructions and these are also fixed and predictable in terms of the work

4

setting and work location, no fast pace production or high production quota type tasks such as might be found along an assembly line or tasks where accounting for a certain level of productivity at various times during the day would be required, and the tasks are those that can typically be performed independently, meaning not requiring collaboration or teamwork with coworkers, and that tasks would also not involve direct interaction or serving the public, as well as no climbing of ladders, ropes, or scaffolds, no requirement in performance of the tasks that there need to be depth perception particularly from the left in light of blindness issues, no work at unprotected heights or with hazards or hazardous machinery, and no tasks requiring balancing such as needing to work at unprotected heights or walk along a narrow plank."

R. 16. At steps four and five, the ALJ found that this RFC precluded Abshir from performing his past relevant work as a poultry hanger, a job he performed for approximately six months in 2009, but that he was capable of performing other work in the national economy, such as Laundry Worker, Package Sealer Machine Tender, and Collator Operator Tender. R. 21-22, 277.

## CONCLUSIONS OF LAW

### I.   STANDARD OF REVIEW

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* § 405(g) (sentence four).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Under the regulations, disability means that the impairment(s) is/are so severe that the

5

claimant is not only unable to engage in previous work, but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id*. § 423(d)(2)(A).

This Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Telkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). On review, the Court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). If it is possible, based on the evidence in the record, to reach two inconsistent decisions, and one of those decisions is the Commissioner's position, the decision must be affirmed. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In other words, the denial of benefits will not be disturbed "so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial trier of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence . . . embodies a zone of choice within which the Secretary may grant or deny benefits without being subject to reversal on appeal."). It remains "the duty of the ALJ to fully and fairly develop the record, even when . . . the claimant is represented by counsel." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

At all five steps, the claimant bears the burden of persuasion to prove entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000). Once the claimant demonstrates that he or she cannot perform past work due to a disability, the burden of production "shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland*, 204 F.3d at 857.

## II.   ANALYSIS

### A.   Presumptive Disability Under Listing 12.03

Abshir first argues the ALJ erred by not finding him presumptively disabled under the "paragraph C" criteria of Listing 12.03.[3] Because the ALJ's determination is not supported by substantial evidence, the Court agrees and recommends the matter be remanded back to the Commissioner of Social Security.

If a claimant shows "his impairment meets or equals a presumptively disabling impairment listed in the regulations, the [five-step] analysis stops and the claimant is automatically found disabled and is entitled to benefits." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). Under paragraph C, a claimant is presumptively disabled with a "serious and persistent" mental disorder if there is "a medically documented history of the existence of the disorder over a period of at least two years" and evidence establishing both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), **or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder (see 12.00G2b)**; and

---

[3] All citations to a Social Security "Listing" are to 20 C.F.R. Pt. 404, Subpt. P, App. 1.

7

> 2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life (see 12.00G2c).

Listing 12.03(C) (emphasis supplied). Abshir's disorder, which the ALJ found to be a severe impairment, has been well documented since the later half of 2011, a period far longer than two years. The question here is whether Abshir established both the "(C)(1)" and "(C)(2)" criteria.

### 1. The "(C)(1)" criteria: highly structured setting

The ALJ's determination that Abshir did not establish the (C)(1) criteria cannot be squared with the record. Abshir has lived in group housing for several years.[4] *E.g.*, R. 37, 43, 463-65. Abshir must keep his room tidy and sort his laundry. Otherwise, his present group home's staff dispense his medication, track and take him to appointments, clean his laundry, shop for groceries, and prepare his meals.[5] R. 37-38, 45-48. As part of 24-hour care, the staff also check on Abshir approximately every two hours and must regularly remind him to shower and groom. R. 45-46, 49. Abshir does not have a representative payee, but the home's workers hold his EBT card because he has previously lost it. R. 48. Further, although Abshir may leave the group home, he may only do so for four hours at a time after informing staff where his going and when he intends to return. R. 47. The group home director and a state benefits case manager

---

[4] In her decision, the ALJ stated that "overall he has lived in these facilities for less than 12-months . . . ." R. 15. Although the record does not establish precisely when Abshir began living at a group home, the record belies the ALJ's statement. Mr. Mustafa Said, the director of Abshir's current group home, testified he met Abshir in the summer of 2013 at Abshir's first group home, where Mr. Said worked at the time. R. 43, 50.

[5] Although the record does not indicate exactly what services Abshir received at his prior group home, the home provided at least some similar services, such as medication administration and food preparation. R. 751-62. A therapist also visited him at his prior group home, rather than meet at the therapist's office. R. 533, 535, 537, 569, 573.

8

determined this time frame and Abshir must abide by it to ensure his continued admission to the group home. *Id.* The group home director, Mr. Said, testified that Abshir's four hours of time in the community is meant to provide Abshir an opportunity to learn independent living skills. R. 49.

As described in this record, Abshir's group home is a highly structured setting. *See, e.g.*, *Barber v. Astrue*, No. 11-cv-1221 (JRT/TNL), 2012 WL 3866646, at *25 (D. Minn. Aug. 16, 2012) (finding the Veterans Home to be a "highly supportive environment" because it "provides meals to its residents, offers some psychology support services, transports residents to and form medical appointments, and administers all medications"); *Wilson v. Astrue*, Civ. No. 10-418 (MJD/AJB), 2011 WL 916357, *14-15 (D. Minn. Feb. 11, 2011) (concluding the plaintiff's "present setting is a highly supportive living arrangement because it is a group-living setting, Plaintiff's living needs are met by the government and managed by a social worker, and Plaintiff receives help from a nurse on a weekly basis").[6]

Contrary to the ALJ's conclusion that there is "no mental health basis" for Abshir to live in a group home, R. 15, Abshir needed to be certified by Minnesota's State Medical Review Team (SMRT), who determined he was disabled and required this level of care. R. 45, 496-528, 738, 748-51, 753, 767. Although the state determination cannot

---

[6] In a single sentence, the Commissioner contends this caselaw is distinguishable because both cases applied a prior version of the regulations. The prior "(C)(3)" criteria required a claimant to show a "[c]urrent history of 1 or more years inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Barber*, 2012 WL 3866646, at *25 (citing prior version of Listing 12.04(C)). The Commissioner does not explain, and the Court cannot see, the practical distinction between a "highly supportive living arrangement" and a "highly structured setting." On the narrow issue of whether Abshir's group home is a highly structured setting, the authority's analysis remains persuasive.

substitute the Social Security listings for the disability determination itself, the state's conclusion, which includes doctor input, is plainly evidence of a medical need to be in a group home. *Barber*, 2012 WL 3866646, at *25 (noting the record contained a determination, based partially on a physician's input, that the plaintiff had a medical need to be at the Veterans Home). Further, medical progress notes made shortly after he entered the first group home indicate that Abshir benefitted from the supports and stability he received there. R. 465.

The testimony of Dr. Lace, the impartial medical expert, on this question is merely conclusory. When discussing the "paragraph B" criteria for meeting a listing, Dr. Lace referenced the record, including specific pages of the exhibits. R. 52-55. However, his testimony regarding the paragraph C criteria consisted entirely of the following exchange with the ALJ:

> Q   All right. And with respect to any corresponding paragraph C elements, are those established in the evidence?
> A   No, they're not, in spite of living in the group home situation.

R. 55. Dr. Lace did not articulate why, in his expert opinion, the paragraph C criteria were not met. This is problematic, as the criteria for paragraphs B and C differ, with paragraph C recognizing that Abshir's structured setting may reduce the signs and symptoms of his diagnosis that would otherwise satisfy the paragraph B criteria. Listing 12.00(D); Listing 12.03(C).

The ALJ also inferred from Abshir's history of homelessness and the fact that he was not involuntarily committed to the group home that Abshir has chosen to stay there for reasons other than medical need. This is a non sequitur, as Abshir's need for a structured setting, such as his present group home is entirely consistent with his past

homelessness. Abshir complained of hearing voices and experiencing disorganized thinking as early as 2010, R. 400, complaints which ultimately resulted in a schizoaffective disorder diagnosis the ALJ found to be a severe impairment. The limited record regarding Abshir's housing history shows that, although he lived independently for some time, he became homeless around 2011, approximately the same time he first complained of symptoms. R. 376, 400, 464. The scientific literature recognizes a relationship between mental illness, such as Abshir's, and homelessness. *E.g.*, David P. Folsom et al., *Prevalence and Risk Factors for Homelessness and Utilization of Mental Health Services Among 10,340 Patients with Serious Mental Illness in a Large Public Mental Health System*, 162 Am. J. Psychiatry 370, 370-76 (2005). Since the onset of his symptoms, there is no evidence in the record of Abshir successfully living independently without the structured supports of the group home, even after he began medication. Rather, the record strongly suggests his group home setting has contributed to his medication compliance. It is unclear why the ALJ concluded Abshir's homelessness was unrelated to the first appearance of his symptoms or that it indicates a medically unnecessary choice to live in a group home.

Similarly, that Abshir was not civilly committed to the group home, by court order or otherwise, and expressed a desire to have his own apartment is irrelevant. The regulations do not require a claimant to show he was civilly committed to a structured setting. To the contrary, the regulations recognize that an individual may create a highly structured setting within their own home or in a semi-independent living environment. *E.g.*, Listing 12.00(D)(1)(g), (D)(2)-(3). An individual's "daily functioning may depend on the special contexts in which [they] function. For example, [the individual] may spend

[their] time among only familiar people or surroundings, in a simple and steady routine or an unchanging environment, or in a highly structured setting. However, this does not necessarily show how [the individual] would function in a work setting on a sustained basis, throughout a normal workday and workweek." Listing 12.03(D)(3)(b). Even if Abshir found other living arrangements, which he has indicated he would like to do, R. 376, he could still be presumptively disabled under the listings.

The ALJ's determination that Abshir did not satisfy the (C)(1) criteria is therefore not supported by substantial evidence. On this issue, the Court remands the matter back to the Commissioner of Social Security, with the direction to find Abshir has satisfied Listing 12.03(C)(1).

### 2. The "(C)(2)" criteria: marginal adjustment

Given the Court's directed finding as to (C)(1), the question whether Abshir is presumptively disabled turns on whether he satisfies the (C)(2) criteria. The ALJ did not directly address whether Abshir is capable of only marginal adjustment despite his structured setting, presumably because she concluded he did not satisfy the (C)(1) criteria. It would be inappropriate for the Court to infer the ALJ's determination from her other findings, as those findings addressed separate, specific standards set forth in the regulations. As the Commissioner notes in his memorandum, for example, "an RFC limitation for simple, routine, fixed, and predictable tasks does not equate to meeting Listing 12.03(C)(2)." Def.'s Mem. Supp. Mot. for Summ. J. 9, Dkt. No. 17. It would also be inappropriate in light of the standard of review, which grants the ALJ significant discretion to consider and resolve conflicting evidence in the record. *E.g.*, *Bradley*, 528

F.3d at 1115. Accordingly, the Court remands the matter to the Commissioner to consider whether Abshir is capable of more than marginal adjustment.[7]

### B.     Abshir's Remaining Objections

Abshir raises three other grounds for remand. Because the Court has already determined remand is appropriate to further consider whether Abshir meets a presumptive disability listing, these grounds may become moot. However, the ALJ may still find that Abshir does not meet Listing 12.03, at which point the Parties would likely return to this Court making the same arguments they do now. The Court thus addresses these remaining grounds briefly, for the sake of completeness. *Barber*, 2012 WL 3866646, at *27.

Abshir argues the ALJ's hypothetical to the vocational expert failed to account for Abshir's limited English skills, and thus the vocational expert's answer regarding jobs Abshir may perform cannot provide substantial evidence. However, the ALJ found Abshir "has a limited education and is able to communicate in English." R. 22. The hypothetical posed to the vocational expert did not need to incorporate a limitation the ALJ did not find to exist as a factual matter, even if the record is mixed as to Abshir's actual level of English proficiency. *See Cox v. Astrue*, 495 F.3d 614, 620-21 (8th Cir. 2007) (stating that an ALJ's hypothetical must "capture the concrete consequences of a claimant's deficiencies"). Remand is unnecessary on this ground.

---

[7] One may conceivably read the ALJ's finding that Abshir remains in the group home to avoid homelessness as a conclusion that Abshir is sufficiently capable of adapting to change in his life. As previously discussed, however, this conclusion does not necessarily follow, as Abshir could have found housing and still required a highly structured environment to mitigate his symptoms. Regardless, such a reading requires an unsupported inferential leap that this Court will not make.

13

Abshir also contends the ALJ inappropriately weighed the opinion testimonies of Dr. Lace and Mr. Said. When an ALJ weights opinions from non-treating or non-medical sources, she must only sufficiently articulate the reasons for the weighing to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning . . . ." 20 C.F.R. § 404.1527(f)(2); *cf. Reece v.* Colvin, 834 F.3d 904, 909 (8th Cir. 2016) (noting that, whatever weight an ALJ gives a treating physician's opinion, she must give good reasons for doing so). As to Dr. Lace, Abshir emphasizes the lack of a treating or examining relationship and failure to reference directly certain portions of the record. The Court cannot agree, as a general matter, that the ALJ erred in placing great weight on Dr. Lace's testimony. Dr. Lace testified that he reviewed all of the medical documents in the record. R. 51. He correctly summarizes the general progress of Abshir's treatment, including portions that suggest Abshir's symptoms are not always under control. R. 52-54. Dr. Lace's opined limitations on Abshir's functioning are consistent with his summarization of the record. R. 54-56; 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to the medical opinion."). The Court does not expect Dr. Lace to cite specifically to every relevant medical document in the record. However, as discussed above, Dr. Lace's opinion regarding the paragraph C criteria was simply conclusory. On remand, the ALJ should weigh the testimony of Dr. Lace on the (C)(2) criteria consistent with this R&R's conclusion that his analysis was incomplete and not supported by citations to the record.

Similarly, the Court cannot conclude the ALJ erred in giving little additional weight to Mr. Said's testimony. The ALJ expressly considered Mr. Said testimony,

14

finding it supported the RFC as described, but did not support more significant limitations given the record as a whole. R. 20. Mr. Said testified that Abshir occasionally acts as though he has heard a voice that clearly is not real and tends to isolate in his room. R. 48-50. Although Mr. Said has known Abshir for several years, and now sees Abshir on an almost daily basis, Mr. Said did not testify to witnessing any behavior or symptoms not otherwise described in the record by medical sources. Thus, the record as a whole supports the ALJ's decision not to place greater weight on Mr. Said's testimony.

Finally, Abshir argues the ALJ erred to the extent she adopted Abshir's representations that he is able to perform many of the activities of daily living independently, as Abshir's condition makes him a poor self-reporter. Mem. Supp. Pl.'s Mot. Summ. J. 17, Dkt. No. 12. Abshir does not direct the Court to any specific example. Rather, he cites two pages of the ALJ's decision in which she considered Abshir's statements, including his hearing testimony, statements Abshir made to Dr. Harlow during appointments, and function reports Abshir completed with Mr. Said assistance. R. 17, 20. Again, the Court cannot say the ALJ erred by considering Abshir's own statements regarding his limitations and abilities. The ALJ did not simply "adopt" any of Abshir's comments regarding his limitations, but listed them along with other evidence. R. 17, 20. From his hearing testimony, she noted both Abshir's description of what he does when he leaves the group home and his claim that he tends to stay at the home and isolate much of the time. R. 17. The ALJ documented both Abshir's subjective statements, as well as his physician's and therapist's observations, which she found to be generally consistent with Abshir's statements. R. 17-19. Abshir's statements in his

function reports are generally consistent with the rest of the record. *E.g.*, R. 315-22. On this record, the Court cannot say the ALJ erred.[8]

## RECOMMENDATION

Based on the foregoing and all the files, records and submissions, IT IS RECOMMENDED THAT:

1. Abshir H. A.'s Motion for Summary Judgment [Docket No. 11] be GRANTED IN PART and the matter be REMANDED back to the Commissioner of Social Security for further consideration consistent with this Report and Recommendation.

2. The Commissioner's Motion for Summary Judgment [Docket No. 16] be DENIED.

Dated: February 3, 2020                     s/David T. Schultz__
                                            DAVID T. SCHULTZ
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[8] The Government is incorrect that Abshir contradicts himself by arguing both that Mr. Said's testimony was given insufficient weight and Abshir's was given too great of a weight. The ALJ concluded that the function reports, although completed by Mr. Said, were written in the first person and so were Abshir's statements. If Mr. Said helped Abshir fill out the forms because of Abshir's limited ability to write complete answers in English, then the statements are Abshir's, not Mr. Said's.

16